Gen. 227]                                                    227

## MUNICIPALITIES – CREATION OF A MUNICIPAL REVENUE AUTHORITY BY CHARTER AMENDMENT

August 16, 1995

*The Honorable Alfred A. Hopkins*
*Mayor of Annapolis*

You have requested our opinion whether the home rule powers of the City of Annapolis authorize it to establish a Revenue Authority for certain public purposes. The Revenue Authority was created by charter amendment; there is no express statutory authority for its creation.

In our opinion, the City acted within its home rule powers in establishing the Revenue Authority as an instrumentality of the City. However, we do not understand your request to call on us to review the legality of every aspect of the power granted to the Revenue Authority.[1] Whether the Revenue Authority may exercise any specific power granted it by charter amendment will depend on the scope of the relevant statutory grant to the City itself and the manner in which the City by ordinance delegates its power to the Revenue Authority.

## I

### The Revenue Authority Charter Amendment

By Charter Amendment No. CA-1-95, the Annapolis City Council amended the Annapolis Charter to create the Annapolis Revenue Authority. Under Article X, §1 of the Charter, the Authority is described as "a body politic and corporate and an instrumentality of the City ...." The Authority's purpose "is to construct, reconstruct, renovate, remodel, improve, equip, furnish, maintain, acquire, operate, and finance projects on behalf of the

---

[1] The legal opinion accompanying your request addressed only the question of the City's power to create the Revenue Authority. The opinion did not address legal issues raised by particular elements of the charter amendment that created the Revenue Authority.

City." Article X, §3. The Authority's public purposes are described in Article X, §9 as follows:

> (a)  The Authority shall be organized and operated exclusively for public purposes.
>
> (b)  It is hereby found, determined, and declared that any project undertaken by the Authority under the provisions of this Article is in all respects for the benefit of the inhabitants of the City and is a public purpose and that the Authority will be performing an essential governmental function on behalf of the City in the exercise of the powers conferred by this Article.
>
> (c)  No part of the net earnings of the Authority may inure to the benefit of any private person or entity.
>
> (d)  Upon dissolution of the Authority, all rights and title to all assets of the Authority shall vest in the City and all such assets shall become the property of the City.

To accomplish its purposes, the Authority has been granted broad powers, including the power to acquire and dispose of property and to "establish, impose, and collect tolls, rates, rentals, fees, and charges relating to its projects." Article X, §5(C). The Authority may also issue bonds to finance its projects, Article X, §6, and to exercise condemnation power, Article X, §7.

Article X, §4 of the charter directs the City Council to enact an ordinance specifying "the membership, organization, jurisdiction, and powers of the Authority." Indeed, the various powers granted to the Authority by the charter are made subject to this ordinance. The ordinance has not yet been enacted.

## II

### Municipal Home Rule Powers

The City of Annapolis is a municipal corporation subject to the provisions of Article XI-E of the Maryland Constitution. Article XI-E's "general purpose ... was to permit municipalities to govern themselves in local matters." *Inlet Associates v. Assateague House Condominium Ass'n,* 313 Md. 413, 425, 545 A.2d 1296 (1988). To that end, Article XI-E, §3 authorizes municipalities "to amend or repeal any existing charter to local laws relating to the incorporation, organization, government, or affairs of said municipal corporation heretofore enacted by the General Assembly ... and ... to amend ... any charter adopted under the provisions of this Article." "[A] municipal charter is in some respects like a local constitution." 74 *Opinions of the Attorney General* 183, 185 (1989).

To implement the municipal home rule amendment, the General Assembly enacted Article 23A of the Maryland Code, which enumerates the express powers of municipal corporations. Article 23A does not authorize a body like the Annapolis Revenue Authority. *Cf.* Article 23A, §§2(b)(35), 44, and 44A (authorizing commercial district management authorities and special tax districts).[2]

Nevertheless, the absence of express statutory authority does not mean that Annapolis is prohibited from creating the Revenue Authority. Article XI-E, §3 of the Constitution itself is a distinct grant of authority for charter amendments "relating to the ... organization, government, or affairs" of a municipality. A charter amendment relating to one of these broad topics may enable a municipality to take actions that are not expressly authorized by Article 23A or another statute. *See Birge v. Town of Easton*, 274 Md. 635, 644-45, 337, A.2d 435 (1975). *In McRobie v. Town of Westernport*, 260 Md. 464, 470, 272 A.2d 655 (1971), the Court of Appeals held that the town lacked sufficient authority to dispose of town property used for governmental purposes. The Court went on to identify two possible sources of the missing authority: a public

---

[2] Statutes other than Article 23A also authorize the creation of authorities for particular purposes. *See* Title 9, Subtitle 9 of the Environment Article (water and sewer authorities); Title 1 of Article 44A (local housing authorities).

general law, "or through amendment of the town charter under Art. XI-E ...."  260 Md. at 470.

The Annapolis Revenue Authority surely relates to the "organization, government, or affairs" of the City of Annapolis.  The City has chosen this method of organizing its financing of public projects.  Hence, the charter amendment creating the Authority is authorized by Article XI-E, §3 of the Constitution.  No more specific authority is needed.[3]

Of course, the Revenue Authority must operate in conformity with Article XI-E and with public general law.  To take but one example, a municipality may not levy any type of tax or fee without authorization by the General Assembly in a generally applicable law. Article XI-E, §5.  *See also* Article 14 of the Declaration of Rights. Thus, for example, Attorney General Sachs advised that a municipality could not create a special taxing district without legislative authorization, because "a municipality has the power to levy a tax only to the extent granted by the State."  Opinion No. 93-036, at 4 (August 19, 1983) (unpublished).

Article 23A, §2(b)(33) authorizes municipalities to levy "fees and charges ... associated with the exercise of any government or proprietary function authorized by law to be exercised by a municipal corporation."  Thus, the Annapolis City Council could itself levy fees to help pay for the projects of the Revenue Authority. But it is doubtful whether the City Council may simply delegate to the Revenue Authority the power to levy fees, without at least a significant degree of guidance or limitation.  *See Mugford v. City of Baltimore*, 185 Md. 266, 44 A.2d 745 (1945) (a municipality may not delegate away legislative or discretionary functions); *Maryland Theatrical Corp. v. Brennan*, 180 Md. 377, 24 A.2d 911 (1942) (municipality may not vest in an administrative official "uncontrolled discretion" over amount of fee); *Automobile Club of Missouri v. City of St. Louis*, 334 S.W.2d 355 (Mo. 1960)

---

[3] This analysis of the municipal home rule amendment should not be taken to suggest the same result under Article XI-A of the Constitution, authorizing charter home rule for counties.  The language of Article XI-A is significantly different.  As a result, counties require express statutory authorization for the creation of a revenue authority.  *See* Opinion No. 81-030 (November 2, 1981) (unpublished); letter of advice from Assistant Attorney General Robert A. Zarnoch to Delegate Brian E. Frosh (February 12, 1992).

(disapproving ordinance delegating to a parking meter commission the authority to fix fees); *Clay v. City of St. Louis*, 495 S.W.2d 672 (Mo. App. 1973) (disapproving provision of ordinance authorizing airport commission to set fees). *But see Creighton v. City of Santa Monica,* 207 Cal. Rptr. 78, 85 (Cal. App. 1984) (approving charter amendment creating a rent control board with significant autonomy, including authority to impose fees).

However, issues of this kind can best be addressed by the City Attorney when the City Council considers the ordinance to implement the charter amendment. In our opinion, and putting to one side legal issues raised by specific grants of power to the Revenue Authority, the charter amendment itself was a valid exercise of the City Council's power under Article XI-E, §3.

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
 *Opinions & Advice*